**FILED**
**Sep 07, 2022**
**12:52 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT COOKEVILLE

| | | |
|---|---|---|
| **JEFFERY EMERSON,** | ) | **Docket No.: 2021-04-0282** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 12856-2021** |
| **CITY OF COOKEVILLE,** | ) | |
| **Employer.** | ) | **Judge Brian K. Addington** |

## EXPEDITED HEARING ORDER

At a hearing on August 23, 2022, Mr. Emerson requested benefits for his colorectal cancer. The City of Cookeville denied them, claiming Mr. Emerson's colorectal cancer was not primarily caused by his employment. For the reasons below, the Court denies Mr. Emerson's request and holds that he is not likely to prevail at a hearing on the merits in proving his cancer is work-related.

### History of Claim

Mr. Emerson worked twenty-four years as a firefighter and fire engineer for Cookeville. He underwent yearly physicals by Dr. Toney Hudson through Cookeville's voluntary program. In November 2021, a colon cancer screen as part of his physical detected cancerous cells. Mr. Emerson notified Cookeville of the positive screen.

Dr. Hudson referred Mr. Emerson to a gastroenterologist for a colonoscopy, which found cancer. The gastroenterologist referred Mr. Emerson to oncologist Dr. Algis Sidrys, who ordered chemotherapy and radiation treatments.[1]

After his notification of a work injury, Cookeville offered Mr. Emerson a physician panel, from which he chose Dr. Hudson. Cookeville asked Dr. Hudson for a causation opinion on Mr. Emerson's cancer. Dr. Hudson responded that another oncologist, Dr. Venumada Kotla, would be better suited to give an opinion.

---

[1] Mr. Emerson received this care through his personal health insurance.

1

At Cookeville's request, Dr. Kotla saw Mr. Emerson, who gave his causation opinion. Dr. Kotla wrote: "In my best clinical judgment, it would not be possible to assign a numerical risk of causation of 50% or more given the limitations of available epidemiologic data." He assigned the causative effect of Mr. Emerson's work on his cancer at thirty percent. Cookeville denied Mr. Emerson's claim based on the assessment.

In response to the denial, Mr. Emerson asked Dr. Sidrys to address causation. Dr. Sidrys noted:

> Given the lack of other risk factors for Mr. Emerson and given the clear proof that firefighters are at an increased risk of GI cancers, specifically rectal cancers, I do believe that Mr. Emerson's employment as a fireman has *a* significant (greater than 51%) chance of having been a causative agent in his malignancy.

(Emphasis added).

Mr. Emerson testified that he was exposed to toxins from structure, vehicle, and brush fires. He gave approximate monthly numbers for each type of incident he worked. He asserted that he ate grilled red meat in moderation and drank from twelve to twenty beers a week. He quit smoking fourteen years ago but was a pack-and-a-half daily smoker before that. He testified that he often got soot on his work uniform, was exposed to diesel exhaust fumes in the garage at work, and inhaled smoke from fires during his employment. He asserted that he exercised frequently to stay in shape for his job. He is currently cancer-free but requested medical benefits for his injury.

Cookeville, through the affidavit of its human resource director, asserted that Dr. Kotla was Mr. Emerson's authorized treating physician, and that it had properly denied his claim after Dr. Kotla gave his opinion.

Both doctors testified by deposition, and both read and considered the NIOSH and Lemaster studies about firefighters and cancer. NIOSH centered on firefighters in large cities, while the Lemaster article was broader.

Dr. Kotla said that he was not the treating physician but was asked to give a causation statement. He, too, had never treated a firefighter for colorectal cancer. He testified that Mr. Emerson ate red meat in moderation, had quit smoking for fourteen years, drank alcohol weekly, and was overweight.

Dr. Kotla had also read the NIOSH and Lemaster studies and acknowledged that they showed firefighters had increased occurrences of colorectal cancer. He found that it was not possible to determine the percentage of the cause of Mr. Emerson's cancer but the

relative risk for firefighters was thirty percent. He stated that the highest risk for Mr. Emerson's cancer was his alcohol intake.

Dr. Sidrys testified he had treated firefighters for cancer, but Mr. Emerson was the only firefighter he had treated for colorectal cancer. He acknowledged that some degree of speculation is necessary in determining the cause of Mr. Emerson's cancer. However, looking at his risks of age, smoking, being slightly overweight, diet, and occupation, his occupation had the higher risk and was a main risk in causing his cancer. Nevertheless, he stated that Mr. Emerson's diet was also a main risk factor.

Dr. Sidrys stated that he knew Mr. Emerson was a firefighter for twenty years or so, and that he had quit smoking for over ten years. He stated he had read several studies about the link between firefighters and colorectal cancer, including the NIOSH and Lemaster studies. He did not state how they related to Mr. Emerson's case directly, other than providing statistics concerning firefighting and cancers. He concluded, "I do believe he *probably* got the disease because of his occupation, yes." (Emphasis added).

**Findings of Fact and Conclusions of Law**

Mr. Emerson must show that he would likely prevail at a hearing on the merits that his cancer and need for treatment arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. §§ 50-6-239(d)(1), 50-6-102(14) (2021).

For his part, Mr. Emerson testified about his employment and exposure to various toxins in the smoke from fires, soot that collected on his gear, and diesel exhaust fumes from the firetruck engines in the firehouse garage. He testified about the approximate times he fought structure fires, vehicle fires, and vegetation fires. However, he did not supply any exact information of this nature for the experts to consider. He also testified about his diet, weight, smoking, and alcohol intake. However, the experts appeared to have different understandings of when Mr. Emerson quit smoking, how long he was a firefighter, his alcohol intake, and his diet.

Concerning medical causation, both parties relied on experts to support their contentions. Both experts were competent to testify about Mr. Emerson's condition.[2] However, neither fully explained how they reached their conclusions, based on the information they received from Mr. Emerson and from medical studies.

The experts relied heavily on the NIOSH and Lemaster studies. The NIOSH study centered on fire departments in large cities, but neither expert explained how this study related to Mr. Emerson's job with the relatively small town of Cookeville. The Lemaster

---

[2] Cookeville moved to exclude Dr. Sydris's expert testimony due to speculation. The Court overrules the motion, as Dr. Sydris explained that he did not just speculate but evaluated the risk factors for Mr. Emerson's condition.

article was broader, but neither expert explained how it directly related to Mr. Emerson's history of fighting fires.

Both experts candidly acknowledged that they do not know what caused Mr. Emerson's cancer. Rather, they reviewed the risk factors and made their respective decisions. In closely reading Dr. Sydris's letter, he stated that Mr. Emerson's job had a significant chance of being *a* causative agent of his cancer. However, he did not say that his job primarily caused his cancer, only that it was a main risk.

In consideration of the above factors, neither expert's testimony assisted the Court in resolving the causation issue. The experts failed to explain how the studies they relied on related directly to Mr. Emerson's case, and they did not state that his work was the primary cause of his colorectal cancer. Also, they did not seem to fully grasp Mr. Emerson's personal and work history.

Under these circumstances, the Court cannot hold Mr. Emerson is likely to prevail at a hearing on the merits in proving that his cancer and the need for treatment arose primarily out of and in the course and scope of his employment.

**IT IS THEREFORE, ORDERED** as follows:

1. Mr. Emerson's claim against the City of Cookeville for the requested benefits is denied at this time.

2. The Court sets a Status Hearing on November 16, at 10:00 a.m. Central. The parties must call **855-543-5044** to participate in the hearing.

**ENTERED September 7, 2022.**

/s/ Brian K. Addington
_____
**JUDGE BRIAN K. ADDINGTON**
**Court of Workers' Compensation Claims**

**APPENDIX**

**Technical Record**

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Transfer Order
4. Hearing Request
5. Motion for Scheduling Order Prior to Expedited Hearing
6. Order Setting Expedited Hearing

7. Employer's Plain Concise Statement Why Relief Requested Should Not be Granted
8. Employer's Witness and Exhibit List
9. Employee's Notice of Filing Exhibit/Witness List
10. Employee's Response to Employer's Plain and Concise Statement
11. Order Granting Extension of Deadline
12. Motion to Exclude Testimony on the issue of Medical Causation by Dr. Sidrys
13. Order Continuing Expedited Hearing
14. Employee's Response to Employer's Motion to Exclude Testimony of Dr. Sidrys with Respect to his Causation Opinion

**Exhibits**

1. Affidavit and Supplemental Affidavit
2. Wage Statement
3. Physician Panel Selecting Dr. Toney Hudson
4. Notice of Denial
5. Transcribed Statement of Mr. Emerson
6. Job Description
7. Carl Sells's affidavit
8. Stipulated Medical Records
9. Dr. Venumadhav Kotla's deposition
10. Dr. Sydris's deposition

## CERTIFICATE OF SERVICE

I certify that a correct copy of this Order was sent on September 7, 2022.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Stephan Karr, Employee's Attorney | | | X | steve@flexerlaw.com cindy@flexerlaw.com |
| Richard Lane Moore, Employer's Attorney | | | X | lane@moorerader.com jenna@moorerader.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____

*[Signature of appellant or attorney for appellant]*